UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WILLIAM HODGES,

                Petitioner,

    -against-

NORMAN BEZIO,

                Respondent.

------------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-3402 (ENV)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★ FEB 24 2012 ★

BROOKLYN OFFICE

**VITALIANO, D.J.**

    <u>Pro se</u> petitioner William Hodges is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and Hodges's habeas petition is dismissed.

## I. BACKGROUND

    On November 12, 1999, Officer David Gonzalez was shot in the front right hip after responding to a 911 call in Queens. Officers who were present at the scene testified that they witnessed and intervened in a struggle between Gonzalez and Hodges, which resulted in Hodges discharging one round from Gonzalez's police-issued handgun. After the shooting, the struggle continued between Hodges and police, which resulted in a stolen handgun falling to the floor.

    Following the incident, Hodges was taken to the police precinct, where Detective Edward Dowd issued <u>Miranda</u> warnings and later obtained Hodges's confession to firing Gonzalez's weapon. On November 18, 1999, Hodges was charged under Queens County Indictment Number 3345/99 with attempted murder in the first degree in violation of N.Y. Penal Law §§ 110.00, 125.27[1][a][i]; attempted murder in the second degree in violation of N.Y. Penal Law §§ 110.00, 125.25[1]; aggravated assault on a police officer in violation of N.Y. Penal Law § 120.11; two counts of assault in the first degree in violation of N.Y. Penal Law §§



1

120.10[3], [4]; two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03[2]; two counts of criminal possession of a weapon in the third degree in violation of N.Y. Penal Law § 265.02[4]; criminal possession of stolen property in the fourth degree in violation of N.Y. Penal Law § 165.45[4]; resisting arrest in violation of N.Y. Penal Law § 205.30; criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.16[1]; and criminal possession of a controlled substance in the fifth degree in violation of N.Y. Penal Law § 220.06[5].

On August 2, 2000, defense counsel served subpoenas on the Civilian Complaint Review Board and the District Attorney's Office in search of records relating to Hodges' arrest. The People moved to quash the subpoenas upon receipt, but Supreme Court denied the motion. The District Attorney filed a motion to reargue, which the court granted on November 14, 2000, but only modified its original order. Still aggrieved, on March 15, 2001, the Queens District Attorney commenced an Article 78 proceeding seeking a writ of prohibition to block enforcement of Supreme Court's orders. On July 30, 2001, the Appellate Division granted the writ. Four months later, on November 20, 2001, the Court of Appeals denied Hodges's application for leave to appeal. Brown v. Grosso, 285 A.D.2d 642, 729 N.Y.S.2d 492 (2d Dept.), appeal denied, 97 N.Y.2d 605, 762 N.E.2d 930, 737 N.Y.S.2d 52 (2001).

In the meantime, beginning on May 1, 2001, the trial court held pre-trial Mapp/Huntley hearings, where defense counsel argued that Hodges's confession was made in violation of his right to counsel. To support this claim, counsel elicited testimony indicating that then Judge-elect Duane Hart had placed a phone call to the precinct on the night of the arrest, invoking petitioner's right to counsel and demanding that the police cease questioning of the suspect. (Hr'g Tr. 259, 265-66.) However, Judge Hart admitted that in his conversation with the precinct he was advised that Hodges had "already rendered a statement." (Id. at 259.) Deciding to credit

2

the testimony of two detectives who had interrogated Hodges, the court found that petitioner failed to demonstrate that he was represented by counsel at the time he made his statement. Accordingly, the court denied Hodges's motion to suppress the statement.

On June 24, 2002, defense counsel moved to dismiss the indictment under New York's speedy trial statute, alleging a violation of N.Y. Crim. Proc. Law § 30.30 for prosecutorial delays exceeding six months. On December 6, 2002, the court granted the motion and dismissed the indictment on all counts. However, on April 27, 2004, that decision was reversed. The indictment was reinstated on November 15, 2004, and leave to appeal was denied on June 2, 2005. People v. Hodges, 12 A.D.3d 527, 784 N.Y.S.2d 638 (2d Dept. 2004), appeal denied, 5 N.Y.3d 763, 834 N.E.2d 1267, 801 N.Y.S.2d 257 (2005).

Hodges's jury trial commenced on March 7, 2006. On April 24, 2006, Hodges was convicted of assault in the first degree; criminal possession of a weapon in the second degree; two counts of criminal possession of a weapon in the third degree; criminal possession of stolen property in the fourth degree; and resisting arrest. The jury acquitted Hodges of attempted murder in the second degree and aggravated assault on a police officer. The charge of attempted murder in the first degree was dismissed before trial; one count of assault in the first degree and one count of criminal possession of a weapon in the second degree were not submitted to the jury. Following his conviction, Hodges also pleaded guilty to criminal possession of a controlled substance in the third degree, which had been severed for trial along with the charge of criminal possession of a controlled substance in the fifth degree. Petitioner received a 25-year prison sentence for first-degree assault, paired with lesser concurrent sentences for the other charges. With respect to his guilty plea, petitioner received a two to six year sentence, also running concurrently with his other sentences.

Petitioner appealed his conviction to the Appellate Division, arguing that: (1) the court's

failure to suppress petitioner's statement was erroneous because petitioner's Fifth Amendment right to counsel was invoked before he made a statement to police, (2) the police failure to videotape the confession violated petitioner's right to due process under the Fifth and Fourteenth Amendments, and (3) petitioner's conviction for possession charges should be reversed in the event that the reviewing court granted relief on either of the first two claims.

On January 13, 2009, the Appellate Division found that the hearing court properly denied defendant's suppression motion. People v. Hodges, 58 A.D.3d 642, 869 N.Y.S.2d 912 (2d Dept.), appeal denied, 12 N.Y.3d 817, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009). The court noted that "[t]he credibility determinations of the hearing court are entitled to great deference on appeal" and that "[t]he record supports the hearing court's determination to credit the detective's testimony, which established that the [petitioner's] right to counsel had not attached when the [petitioner] made the statements to detectives." Id. at 642 (citations omitted). Moreover, the Second Department held that petitioner's claim that his due process rights were violated by the police failure to videotape the interview was "unpreserved for appellate review" and, in any event, "without merit." Id. In light of the court's decision on the first two grounds, petitioner's third claim became moot. On April 1, 2009, the Court of Appeals denied petitioner's application for leave to appeal. People v. Hodges, 12 N.Y.3d 817, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009).

On July 14, 2009, petitioner filed a pro se motion with the Appellate Division for a writ of error coram nobis, arguing that he was denied his right to effective assistance of trial and appellate counsel under the Fifth, Sixth, and Fourteenth Amendments. The Appellate Division denied petitioner's application on January 19, 2010. People v. Hodges, 69 A.D.3d 879, 892 N.Y.S.2d 781(2d Dept. 2010). Petitioner never appealed the decision.

On July 27, 2009, Hodges filed the instant petition. He argues that: (1) his right to a speedy trial under the Sixth and Fourteenth Amendments was violated, (2) his right to counsel

4

under the Fifth and Fourteenth Amendments was violated by the court's failure to credit the testimony of Judge Hart and suppress petitioner's statement, and (3) his right to due process under the Fifth and Fourteenth Amendments was denied by the police failure to videotape his interrogation. On August 26, 2009, Hodges filed a motion to expand and clarify his petition. There, he restates his speedy trial and right to counsel claims but adds a claim for ineffective assistance of trial and appellate counsel. He also claims that his "pre-trial right[] to discovery" was not adequately protected by the trial court since the police never provided the defense with phone records relating to Hart's call to the precinct.

On February 18, 2010, after filing his petition, Hodges filed a motion to vacate in state court, raising ineffective assistance of trial counsel claims. The trial court denied the motion on April 29, 2011 and permission to appeal was denied by the Appellate Division on February 2, 2012. The Appellate Division did not issue a certificate granting leave to appeal to the Court of Appeals. No further appeal of that order is available under state law. See Roache v. Connell, No. 06 Civ. 3567, 2011 WL 1465989, at *1 (S.D.N.Y. April 14, 2011).

## II.     STANDARD OF REVIEW

The Supreme Court of the United States has made it clear that "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S. Ct. 2781, 2795 n.5 (1979)). Following AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of 28 U.S.C. § 2254(d)(1) unless "the state court arrive[d] at a

5

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., for the Court, Part II). Similarly, a federal court is not free to issue a writ of habeas corpus under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. But a state court's "unreasonable application" of law must have been more than "incorrect or erroneous:" it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (quoting Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003). This is because "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." Cullen v. Pinholster, 131 S. Ct. 1388, 1401 (2011). Under AEDPA's deferential standard of review, "'[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Id. (quoting Williams, 529 U.S. at 437).

# III.  DISCUSSION

## A. Speedy Trial Claim

Hodges first claims that his right to a speedy trial was violated. He specifically challenges the Appellate Division's adjudication of his motion under N.Y. Crim. Proc. Law § 30.30. As a preliminary matter, it is clear that a federal court may entertain a state prisoner's petition for a writ of habeas corpus "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added); see Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). And any alleged violation of New York's statutory speedy trial provision is a *state law* claim not cognizable on federal habeas review. See Gibriano v. Att'y Gen. of the State of N.Y., 965 F. Supp. 489, 491-92 (S.D.N.Y. 1997) ("A C.P.L. § 30.30 claim has been held not to raise the federal constitutional speedy trial claim."); Woodard v. Berry, No. CV-90-1053, 1992 WL 106508, at *2 (E.D.N.Y. Apr. 24, 1992) ("Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial.").

Moreover, to the extent that Hodges asserts his right to a speedy trial under the Sixth Amendment, he has not exhausted the remedies available to him in the state courts. Since Hodges's § 30.30 claim, as denominated, does not present a federal ground for relief, it follows that any attempts to vindicate that claim in state court did not fairly present a federal constitutional issue to those courts. See Woodard, 1992 WL 106508, at *2 (quoting Picard, 404 U.S. at 276) ("[B]ecause the petitioner presented his 'speedy trial' claim in the state courts only as a claim under Section 30.30, . . . he did not give the state courts a 'fair opportunity' to consider the federal question he now presents to this court.); see also Anderson v. Harless, 459

U.S. 4, 6, 103 S. Ct. 276, 277 (1982) (habeas petitioner does not exhaust state court remedies of a federal claim by raising a "somewhat similar state-law claim"). Hodges claims in his petition that his trial counsel in fact "filed a motion to dismiss the indictment based on violations of the 6th Amend[ment]" (Pet'r Habeas Petition at 8.) While there is no evidence of this in the record before the Court,[1] even if it were true that Hodges's trial counsel invoked the Sixth Amendment in his motion to dismiss the indictment, the claim was never presented to the Appellate Division. See Baldwin. 541 U.S. at 31. Therefore, Hodges did not "fairly present[]" his claim to the state courts. Id.

In any event, Hodges's claim also fails on the merits. The Sixth Amendment guarantees the right to a "speedy and public trial" in all criminal prosecutions, U.S. CONST. amend. VI, which has been recognized as a fundamental right incorporated against the States through the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 223-24, 87 S. Ct. 988 (1967). Unlike state statutory provisions securing the right to a speedy trial, the Supreme Court has held that it is "impossible to determine with precision when [the federal constitutional right to a speedy trial] has been denied" and has found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." Barker v. Wingo, 407 U.S. 514, 521, 523, 92 S. Ct. 2182, 2187, 2188 (1972). Instead, the Court has adopted a balancing test which "compels courts to approach speedy trial cases on an ad hoc basis," considering factors that include the "[l]ength of delay, the reason for the delay,

---

[1] Indeed, in the midst of Hodges's state court speedy trial litigation, his own brief recognized that "respondent moved to have the indictment dismissed pursuant to C.P.L. § 30.30" and further argued that "the [trial] court properly dismissed the indictment under C.P.L. § 30.30." (Brief for Defendant-Respondent at 30, 31); People v. Hodges, 12 A.D.3d 527, 784 N.Y.S.2d 638 (2d Dept. 2004) (No. 2002-11322), 2003 WL 23734185. Moreover, Hodges cited only state law to support his speedy trial claim before the Appellate Division.

the defendant's assertion of his right, and prejudice to the defendant." Id. at 530.

The first Barker factor—the length of delay—is a "triggering mechanism" which demands inquiry into the remaining factors only when the delay is of a "presumptively prejudicial" magnitude. Id. To meet this threshold, a delay must be in the ballpark of approximately one year. See, e.g., Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992) (post-accusation delay "approach[ing] one year" is presumptively prejudicial); United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (citations omitted) (noting "a general consensus that a delay of over eight months" is presumptively prejudicial). Hodges was arrested on November 12, 1999 and his trial did not commence until March 7, 2006, a delay of approximately 76 months. Clearly, this is sufficient to trigger further inquiry.

Considering the remaining three Barker factors, however, Hodges's claim fails. First, regarding the reasons for delay, the Supreme Court has acknowledged that "there are important public interests in the process of appellate review" and that "an interlocutory appeal by the government ordinarily is a valid reason that justifies delay." United States v. Loud Hawk, 474 U.S. 302, 313, 315, 106 S. Ct. 648, 655, 656 (1986). Moreover, in judging the reasonableness of such appeals by the prosecution, courts are encouraged to consider "the strength of the [prosecution's] position on the appealed issue, the importance of the issue in the posture of the case, and . . . the seriousness of the crime." Id. at 315. Here, Hodges experienced pre-trial delays from November 15, 2000 to November 20, 2001 and June 24, 2002 to June 2, 2005. It is worth noting that both periods were initiated by petitioner's own efforts to vindicate his rights other than through trial. Moreover, Hodges has made "no showing of bad faith or dilatory purpose" on the People's behalf, and the Appellate Division's reversals on both motions are "prima facie evidence of the reasonableness of the [People's] action." Id. As such, both periods attributable to the prosecution's successful interlocutory appeals should be excluded for purposes

9

of speedy trial consideration. After subtracting these periods of delay, a maximum of 29 months remain. Even if this entire span were attributable to prosecutorial delays,[2] this period easily falls within the range of delays found to be acceptable for speedy trial purposes under the federal Constitution. See, e.g., Barker, 407 U.S. at 534, 92 S. Ct. at 2194 (delay exceeding four years due to prosecution's decision to try related defendant first); United States v. Fasanaro, 471 F.2d 717, 717 (2d Cir. 1973) (delay exceeding four years due primarily to prosecution's failure to locate witness); United States v. Saglimbene, 471 F.2d 16, 17 (2d Cir. 1972) (four year delay due to prosecution's decision to try related defendant first).

Additionally, Hodges does not claim that he was prejudiced in any way by the People's failure to bring him to trial, whether by some impairment of his defense or by witnesses' deaths or inability to recall events accurately. See Barker, 407 U.S. at 532; see also Rayborn v. Scully, 858 F.2d 84, 94 (2d Cir. 1988) (citing the reluctance of courts to find a speedy trial violation "in the absence of genuine prejudice"). Lastly, Hodges's failure to vigorously assert his speedy trial right also weighs against him. Although it is true that Hodges asserted his right to a speedy trial, he waited approximately 31 months before he did—alleging approximately nine months of delay—while another nine months lapsed following the start of his speedy trial litigation. See United States ex rel. Eccleston v. Henderson, 534 F. Supp. 813, 816 (E.D.N.Y.) ("petitioner did not assert his right aggressively enough" where he made only one motion to dismiss the indictment, occurring nine months after arrest and nine months before the commencement of trial), aff'd sub nom., Eccleston v. Henderson, 697 F.2d 289 (2d Cir. 1982). All of this, of

_____

[2] Notably, however, this case is quite different. The Appellate Division found that fewer than six months of the initial 20-month period should have been charged to the People. See People v. Hodges, 12 A.D.3d 527, 784 N.Y.S.2d 638 (2d Dept. 2004), appeal denied, 5 N.Y.3d 763, 834 N.E.2d 1267, 801 N.Y.S.2d 257 (2005). Moreover, Hodges himself does not controvert this finding. He claims that the prosecution should be charged with "184 days" of delay, obviously responding to the outcome of his statutory speedy trial litigation. (Pet'r Habeas Petition at 3.)

course, is not to lose sight of the fact that Hodges failed to press the claim technically before the Court now by not raising it on federal grounds in the first place.

Considering the totality of circumstances in this case, the Court concludes that Hodges's Sixth Amendment claim is without merit. It is dismissed.

## B. **Right to Counsel**

Next for consideration is the assertion that petitioner's Fifth Amendment right to counsel was violated by the trial court's failure to suppress his inculpatory statement at the precinct. Hodges claims violation because his attorney had called the station, informed the police that he represented Hodges, and insisted that the police cease their questioning—all *prior to* the time Hodges made a statement to police. Regardless that the timing is disputed, any such dispute about when the call was made is irrelevant. New York's constitutional jurisprudence on this score affords much more generous protection in that the New York Court of Appeals has held that the right to counsel attaches "once the police know or have been apprised of the fact that . . . an attorney has communicated with the police for the purpose of representing the defendant." People v. Arthur, 22 N.Y.2d 325, 329, 239 N.E.2d 537, 539, 292 N.Y.S.2d 663, 666 (1968). Not so under federal law, where it is well-settled that "the privilege against compulsory self-incrimination is . . . a personal one that can only be invoked by the individual whose testimony is being compelled." Moran v. Burbine, 475 U.S. 412, 434 n.4, 106 S. Ct. 1135, 1147 n.4 (1986).[3]

---

[3] It is worth noting that Burbine was decided on facts nearly identical to those presently before the Court. There, defendant's sister obtained counsel for him following his arrest. An assistant public defender then called the police station, notifying detectives that their suspect was represented by counsel and that she would act as counsel if police sought to question the suspect further. After assuring counsel that no further questioning would take place, the police interrogated the suspect and elicited a full confession about an hour later. Throughout all of this, the suspect was unaware of his sister's efforts to retain counsel on his behalf and the substance of counsel's conversations with the police.

Moreover, "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." Id. at 422; see United States v. Scarpa, 897 F.2d 63, 69 (2d Cir. 1990) ("[A] waiver of constitutional rights is valid even though the defendant is not informed that an attorney retained without his knowledge by third person has asked that the defendant not be questioned."). Similarly, the Constitution does not "require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Burbine, 475 U.S. at 422. The federal jurisprudence is clear, therefore, that Hodges's attorney, whether retained by his mother or even by Hodges himself,[4] had no ability to invoke Hodges's right to counsel. Hodges was required to do that himself and it is undisputed that he did not. Accordingly, the writ may not issue on this ground.

## C. **Failure to Videotape Interrogation**

Next on Hodges list is a claim that his guarantee of due process under the Fourteenth Amendment was violated by the failure of inquiring detectives to videotape his interrogation. At threshold, the Appellate Division found that this claim was "unpreserved for appellate review and, in any event, [was] without merit. People v. Hodges, 58 A.D.3d 642, 642, 869 N.Y.S.2d 912, 912 (2d Dept.) (internal citations omitted), appeal denied, 12 N.Y.3d 817, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009). It is well-established that "federal habeas review is precluded 'as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.'" Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (quoting Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989)). Here, the Appellate Division found the claim

---

[4] See United States v. Palmieri, No. 97-CR-0356 (JG), 1998 WL 765138, at *3 (E.D.N.Y. Apr. 20, 1998) ("If the Supreme Court's holding that a suspect's Fifth Amendment rights are 'personal' is to have any meaning, then the fact that an attorney who attempts to invoke those rights without her client's knowledge was previously retained by that client, and not by a third party, should make no difference.").

procedurally defaulted, *in addition to* explaining that it lacked merit. If follows that even if the court had decided that the claim was meritorious, it would have been subject to an adequate and independent state law ground for dismissal. See Velasquez, 898 F.2d at 9.

The result would not change on substantive review, since, in addition to being unpreserved, the claim is baseless. The Fourteenth Amendment does not require law enforcement to videotape custodial interrogations, notwithstanding any perceived benefits that might accrue from such a practice. It is noteworthy that Hodges has cited no federal authority to support this claim. And there is good reason. Several circuits have held that there is no federal constitutional right to a videotaped interrogation. See, e.g., United States v. Meadows, 571 F.3d 131, 147 (1st Cir. 2009), cert. denied, 130 S. Ct. 569 (2009) ("[T]here is no federal constitutional right to have one's custodial interrogation recorded."); United States v. Tykarsky, 446 F.3d 458, 477 (3d Cir. 2006) ("Whatever the merits of the policy arguments in favor of requiring the recording of interrogations may be, it is clear that such recording is not mandated by the United States Constitution."); United States v. Zamudio, No. 99-2256, 2000 WL 488474, at *2 (10th Cir. Apr. 26, 2000) (upholding district court's rejection of petitioner's claim "that his Fifth Amendment rights were violated by the [government's] failure to tape-record his interrogation."); United States v. Toscano-Padilla, No. 92-30247, 1993 WL 210793, at *2 (9th Cir. June 16, 1993) ("We decline to hold . . . that a failure by law enforcement officials to record an interrogation violates due process."); United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988) ("[T]here is no constitutional requirement that confessions be recorded by any particular means."). Indeed, this is true even where the department conducting the interrogation acts contrary to internal mandates that require the use of electronic recording equipment. See Linnen v. Poole, 766 F. Supp. 2d 427, 455 (W.D.N.Y. 2011). Therefore, Hodges's claim fails on the merits as well.

13

## D. Ineffective Assistance of Counsel

In his amended petition, Hodges also raises a claim for ineffective assistance of counsel. Mindful of petitioner's pro se status, his petition is construed as reiterating each of the grounds raised by his coram nobis motion and the post-petition motion to vacate in state court. On coram nobis, petitioner claimed he was denied effective assistance of appellate counsel for: (1) failure to confer with petitioner regarding claims that would be raised in the appellate brief prior to its submission, (2) failure to raise issues requested by petitioner such as ineffective assistance of trial counsel, (3) failure to argue that all of petitioner's convictions be reversed and a new trial ordered, and (4) failure to claim a violation of petitioner's Fourth Amendment rights consistent with arguments raised by trial counsel. Petitioner also raised several ineffective assistance of trial counsel claims through his coram nobis motion. However, a coram nobis motion is not the proper vehicle for adjudicating ineffective assistance of trial counsel claims. See Aparicio v. Artuz, 269 F.3d 78, 100 (2d Cir. 2001) (emphasis in original) (internal citations omitted) ("Coram nobis . . . has been largely superseded by the motion to vacate a judgment [but] remains available as a remedy only in those situations not explicitly covered by § 440.10. Thus far, its use has been sanctioned by the [New York] Court of Appeals only in the context of ineffective assistance of appellate counsel."); People v. Gordon, 183 A.D.2d 915, 915, 584 N.Y.S.2d 318, 318 (2d Dept. 1992) ("[T]he writ of error of coram nobis lies in this court only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel."). Putting aside any procedural shortcomings in the coram nobis petition, Hodges also subsequently filed a motion to vacate, claiming he was denied effective assistance of trial counsel for failure (1) to call important eyewitnesses Paul Leggette and Alexander Riddick to testify at trial, (2) to make a timely request to test and examine Officer Gonzalez's holster prior to trial, (3) to make a record that the evidence was insufficient to sustain the jury's

14

verdict, (4) to request a change in venue, and (5) to move to exclude uniformed police officers from the courtroom. Hodges also claims, through his amended petition, that trial counsel was ineffective for his failure to call expert witnesses to rebut the prosecution's scientific evidence.

1. Ineffective Assistance of Trial Counsel

To the extent that Hodges relies on his coram nobis motion as a method for exhausting his ineffective assistance of trial counsel claims, he succumbs to fatal strategic error. It is clear that the exhaustion requirement is not met where a petitioner seeks post-conviction relief through the wrong appellate procedure. See Dean v. Smith, 753 F.2d 239, 241 (2d Cir. 1985) (citing Ex parte Hawk, 321 U.S. 114, 64 S. Ct. 448 (1944) (per curiam)) (Since petitioner "used the wrong procedural vehicle, the state courts never had a fair opportunity to pass on his claim."). Given that ineffective assistance of trial counsel claims may be presented only on direct appeal or through a C.P.L. § 440 motion, Hodges erred by pursuing those claims on coram nobis. However, while this petition was pending, Hodges also filed a 440 motion to vacate in the trial court, raising several ineffective assistance of trial counsel claims. Though Hodges did not formally seek a stay of the instant habeas proceedings prior to filing the motion, the Court deems the notice petitioner gave that he had filed the new state court motion to be a motion to stay pending exhaustion of his ineffective assistance claims, which is granted nunc pro tunc.[5] The belated strategy was to no avail. Hodges's motion to vacate was denied by the trial court on April 29, 2011 and permission to appeal was denied by the Appellate Division on February 2,

_____

[5] Hodges also simultaneously requested leave to expand his petition to address the ineffective assistance claims contained in his motion to vacate. Though these claims were unexhausted at the time this petition was filed, they are addressed here on their merits as they appeared in petitioner's motion to vacate in state court. Furthermore, to the extent Hodges seeks to add any claims not previously and finally considered by the state courts, those claims would be barred as unexhausted. See 28 U.S.C. § 2254(b)(1)(A). Since all of petitioner's claims are thoroughly considered here, there is no need for petitioner to amend the petition formally. In light of this expansive treatment, the motion to amend is denied as academic.

2012. Although there is no right to appeal the Second Department's decision, a defendant may still appeal an adverse decision rendered by the Appellate Division to the Court of Appeals provided that a certificate granting leave to appeal has been issued pursuant to N.Y. Crim. Proc. Law § 460.20. See N.Y. Crim. Proc. Law § 450.90. Since Hodges has obtained no such certificate, the claim is, as a result, exhausted.[6]

Habeas review focuses on the Sixth Amendment's guarantee that an accused not be denied the right "to have the Assistance of Counsel for his defence," U.S. CONST. amend. VI, which has been incorporated against the states through the Fourteenth Amendment. See Gideon v. Wainright, 372 U.S. 335, 344, 83 S. Ct. 792, 796 (1963). Indeed, the Supreme Court has noted in the decision controlling the outcome of this claim that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." Strickland v. Washington, 466 U.S. 668, 684, 104 S. Ct. 2052, 2063 (1984). "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. . . . An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Id. at 685. The Sixth Amendment therefore envisions more than a mere right to counsel, but rather "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14 (1970).

While counsel's performance may not always meet a defendant's expectations, counsel's shortcomings must reach constitutional proportions to support a claim of ineffective assistance of counsel. A defendant must first demonstrate counsel's deficient performance by showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

---

[6] Though the record is silent, it is likely that Supreme Court denied the motion for failure to raise ineffective assistance of trial counsel on direct appeal. If so, the claim is also defaulted.

defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. This requires "that counsel's representation fell below an objective standard of reasonableness," considering "all the circumstances" and "prevailing professional norms." Id. at 688. Second, a defendant must establish that "the deficient performance prejudiced his defense," by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. To do this, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Furthermore, when assessing a claim of ineffective assistance, a court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Indeed, "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." Id. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Id. at 696. At bottom, a court "should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. It is essential to heed these principles, lest "[c]riminal trials resolved unfavorably to the defendant . . . come to be followed by a second trial, this one of counsel's unsuccessful defense." Id. at 690.

### i. Failure to Call Witnesses, Including Experts, and to Examine Evidence

Hodges's first three claims all challenge the strategic decisions of counsel. With respect to strategic decisions of counsel during trial, "[a]ctions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance of counsel." Gilmore v. United States, No. 09 Civ. 1183(DAB), 2011 WL 2581774, at *5 (S.D.N.Y. June 23, 2011) (citing

United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999)). Moreover, "[t]he Second Circuit has repeatedly instructed that courts 'will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed.'" Minor v. Henderson, 754 F. Supp. 1010, 1018 (S.D.N.Y. 1991) (quoting United States v. Ditommaso, 817 F.2d 201, 215 (2d Cir. 1987)).

With respect to the failure to call Leggette and Riddick, it must be observed that "complaints of uncalled witnesses are not favored in federal habeas review, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Caronia v. Jones, No. CV-84-4779, 1988 WL 83186, at *1 (E.D.N.Y. June 30, 1988) (citations omitted). See also United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974) (internal citation omitted). In Hodges's case, counsel might well have believed that calling witnesses to contradict the sworn testimony of several police officers who witnessed the events and to contradict Hodges's own incriminating statement would have been futile. Worse yet, it might have damaged counsel's credibility with the jury. In any case, it is quite difficult to say that counsel's decisions in this regard were unreasonable or failed to reflect sound trial strategy. Giving counsel the deference to which he is entitled under Strickland, and viewing the circumstances facing counsel at the time of trial, the Court cannot find that counsel's failure to call these other eyewitnesses constituted ineffective assistance.

With respect to calling experts, it is clear that "Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert" must be called by the defense. Harrington, 131 S. Ct. at 791. Furthermore, cases of ineffective assistance for failure to call experts typically involve situations where expert testimony would attack the core of the prosecution's theory—for instance, where it would rebut the only evidence linking a defendant to the crime, or where the evidence of a defendant's guilt

is thin and relies heavily on expert testimony. See, e.g., Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005) (finding ineffective assistance where "the evidence against petitioner [was] relatively thin, [and] most of it could have been, but was not, effectively challenged by defense experts."); Rogers v. Israel, 746 F.2d 1288, 1294 (7th Cir. 1984) (finding ineffective assistance where expert testimony could have rebutted the prosecution's theory in a murder case and the facts were otherwise "very close"); Usher v. Ercole, 710 F. Supp. 2d 287, 313 (E.D.N.Y. 2010) (finding ineffective assistance where "the State's case against [petitioner] was relatively weak" and "[t]he testimony of [the prosecution's expert] and the only physical evidence in the case could each have been undermined by contemporaneous medical literature and informed expert testimony."). The central role expert testimony has played in cases that find ineffective assistance is a far cry from the circumstances of Hodges's case. Miles from being a focal point of establishing Hodges's guilt, the prosecution's expert testimony played a predominately corroborative role. The fact that Hodges fired the weapon was established primarily through the testimony of Officer Gonzalez, by police eyewitnesses, and, again, by Hodges's own statement to police. Faced with eyewitness testimony from multiple police officers and an incriminating statement from the defendant himself, counsel reasonably could have concluded that introducing expert testimony to rebut ballistics evidence would have been fruitless. Indeed, it is unclear what Hodges believes this testimony would have shown. In light of all the circumstances, counsel's conduct in neither consulting nor calling an expert in ballistics was not unreasonable.

Finally, with respect to the failure to examine evidence contention, counsel is entitled to "make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Moreover, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. Surely, "sometimes it is better to try to cast pervasive suspicion of doubt than to

strive to prove a certainty that exonerates." Richter, 131 S. Ct. at 790. This may be especially true in cases where the evidence of defendant's guilt is tied more closely to witness testimony than to physical evidence requiring scientific testing. Here, rather than attempting to convince the jury that Hodges could not have grabbed Officer Gonzalez's weapon from his holster, counsel's time was more effectively spent discrediting the testimony of the various eyewitnesses who testified to seeing Hodges shoot Officer Gonzalez with the wandering weapon. Even a convincing argument that Hodges could not unholster the weapon would not carry the day. There remained eyewitness testimony that Hodges shot Officer Gonzalez with the officer's own weapon. Whether or not Hodges or the officer withdrew the weapon from the holster, several officers identified Hodges as having discharged it. In light of this, it was certainly reasonable trial strategy to focus on the eyewitness testimony about how and by whom the weapon was discharged. This testimony was at the heart of the prosecution's case, and any attempt to cast doubts upon it appears to have been well-placed. More than that, it was largely successful— effectively winning acquittals on the most serious charges of attempted murder.

More critically, even assuming counsel made strategic miscalculations, as required by the second prong of Strickland, Hodges cannot show that counsel's errors prejudiced his defense. See Strickland, 466 U.S. at 694. Hodges has provided no evidence to challenge the conclusions of the prosecution's experts, nor has he provided any other evidence to shed new light on the proceedings or the prejudicial effect of counsel's alleged lack of diligence. See Richter, 131 S. Ct. at 792 (no prejudice where petitioner "offered no evidence directly challenging . . . conclusions reached by the prosecution's experts" and "did [not] provide any direct refutation of the State's expert testimony."). Additionally, in light of the overwhelming evidence against Hodges, there is no reasonable probability that the jury's verdict would have been different. See id. ("[A]ny real possibility of [petitioner] being acquitted was eclipsed by the remaining evidence

pointing to guilt."). More broadly, the record reveals that Hodges's conviction at trial was not due to a breakdown in the adversarial process. To the contrary, petitioner's counsel tried his case with an eye toward discrediting the prosecution's most damaging evidence, without which the case against Hodges would have been significantly weakened. Had counsel pursued the strategies petitioner suggests, the jury may have questioned counsel's credibility and wondered why, rather than confronting the principal evidence against his client, he instead chose to focus on peripheral issues that failed to absolve Hodges from any wrongdoing. To be sure, such a strategy might have undermined the substantial success counsel achieved for Hodges. The choices made by counsel were well-within the bounds of Strickland.

### ii. Failure to Exclude Police Officers

Petitioner next challenges counsel's failure to exclude uniformed, non-testifying police officers from the courtroom during trial. Hodges argues that counsel's inaction prejudiced his defense, given that "the allege[d] victim was a police officer." (Pet'r Motion to Vacate at 5.) The Supreme Court has held that the presence of uniformed officers may at times pose an "unacceptable risk" to a defendant's right to receive a fair trial. See Holbrook v. Flynn, 475 U.S. 560, 570, 106 S. Ct. 1340, 1346-47 (1986) (citations omitted). However, the circumstances that pose an unacceptable risk are far from well-defined, and few courts have encountered such risks from spectator conduct. See id. at 571 (no unacceptable risk where four armed police officers were present in the front row behind defendant for security purposes); Lambert v. McBride, 365 F.3d 557, 563-64 (7th Cir. 2004) (no unacceptable risk where six to eight officers, but as many as 15, were present during the trial of colleague's alleged murderer and "there was no indication that the officers were in any way trying to intimidate the jurors."); Hill v. Ozmint, 339 F.3d 187, 200 (4th Cir. 2003) (citations omitted) (no unacceptable risk where officers were "dispersed throughout the courtroom" at the trial of colleague's alleged murderer but did not "brand"

defendant "with an unmistakable mark of guilt); Will v. Thaler, No. H-07-CV-1000, 2010 WL

2179680, at *22 (S.D. Tex. May 25, 2010) (no unacceptable risk where 13 police officers were

present in the courtroom since "law enforcement personnel sitting in the spectator gallery may

signal nothing more tha[n] fraternal support for a fallen officer's family."); Bell v. True, 413 F.

Supp. 2d 657, 721 (W.D. Va. 2006) (no unacceptable risk where "the trial judge clearly

acknowledged the potential for prejudice created by the presence of uniformed officers [at trial

of alleged murderer of a police officer], and there [was] no evidence that any such problem arose

during the course of trial."); but see Woods v. Dugger, 923 F.2d 1454, 1459 (11th Cir. 1991)

(unacceptable risk where 45 uniformed prison guards were present, for no purpose other than to

observe the proceedings, at the trial of defendant charged with the murder of a prison guard in a

small community where prisons provided a substantial portion of local employment). In any

case, the Supreme Court has not specifically decided what circumstances or number of police

officers in a courtroom actually constitute an unacceptable risk to a defendant's right to a fair

trial. The short of it is, had such an application been made, it would not likely have been a

winning argument, much less a clear winner.

Here, Hodges provides no evidence regarding the number of police officers that were

present during trial, claiming in his amended petition that "the courtroom was filled with law

enforcement person[nel] to the point of disrupting the proceedings." (Pet'r Amended Pet. at 3.)[7]

But even if petitioner's conclusory description establishes the presence of numerous officers,

nothing suggests that their presence reached the magnitude encountered in Woods or that the

community was peculiarly sympathetic to Officer Gonzalez's shooting. As such, Hodges's

counsel cannot be deemed ineffective for his failure to raise an objection of such speculative and,

---

[7] Interestingly, petitioner fails to even specify whether the officers were actually in uniform or not.

frankly, given the absence of record support of courtroom disruption, doubtful validity. Lastly, the point here is strategy. Counsel's theory, essentially, was to attack the flood of "Blue" testimony. The presence of the uniformed police officers in the courtroom, if anything, may have complemented that point. It is not for a court to second-guess its efficacy.

Assuredly, counsel's representation did not fall below an objective standard of reasonableness. Quite to the contrary, counsel clearly took note of the police presence and made numerous efforts to ensure that the jury would not be adversely affected by the presence of police officers, both asking during <u>voir dire</u> whether any jurors would feel intimidated by the presence of police in the courtroom and noting their presence during trial. (Tr. 141-42, 199-200, 370-71, 652.) Finally, Hodges cannot show that any alleged failures of counsel on this score prejudiced his defense. Indeed, as noted, counsel received assurances from prospective jurors that none of them would feel intimidated by the presence of police in the courtroom. Accordingly, there is no reasonable probability that the jury would have exonerated Hodges had there been no uniformed officers present during his trial. In fact, their presence may have easily helped the defense.

### iii.   Failure to Move for Change of Venue

Hodges further claims that counsel was ineffective because he did not move for a change of venue, asserting that his case was "highly publicized in the city newspaper" and that there was television news coverage throughout. (Pet'r Motion to Vacate at 5.) However, courts have been reluctant to find constitutional violations for a failure to move for a change of venue where a fair and impartial jury was empanelled and there is no proof that media coverage influenced the jury's verdict. <u>See</u> <u>United States v. Kennedy</u>, 21 F. App'x 82, 86 (2d Cir. 2001) (internal quotation marks omitted) ("The court had little trouble empanelling a fair and impartial jury and . . . the pretrial publicity had not caused a clear and convincing buildup of prejudice among the

jurors."); Strouse v. Leonardo, 715 F. Supp. 1170, 1179 (E.D.N.Y. 1989) ("There is no allegation

that any of the jurors were affected by the media coverage" or that any jurors "disregarded the

admonition" from the judge not to "listen or read any account of the case if it appears in the

newspaper or other media."). Petitioner does not allege that any news accounts of his case

reached the jury or that any juror formed a bias or otherwise acted upon such information in

reaching a verdict. See Strouse, 715 F. Supp. at 1179. Furthermore, the record shows that the

judge warned jurors that the case had received "some notoriety" and asked whether they had

"formed any opinions which would prevent them from reaching a verdict based solely on the

evidence." (Tr. 5-6.) In an abundance of caution, the judge also repeatedly alerted the jurors to

this issue and stressed that they not discuss the case with anyone or read about it in the news.

(Id. at 48, 143, 149, 153.) Consequently, petitioner has failed to show that the news coverage of

the case played any role in the jury's verdict and so counsel's decision not to move for a change

of venue was not deficient in any way. Since Hodges cannot show that any juror relied on

evidence beyond what was adduced at trial, he also cannot demonstrate a reasonable probability

that the jury's verdict would have been different following a motion to change venue. The facts

do not come close to establishing the ineffectiveness of trial counsel on this basis.

### iv.  Failure to Make a Record of Insufficient Evidence

Finally, Hodges challenges counsel's failing to make a record that the evidence was

insufficient to sustain his conviction. While he does not elaborate on this claim in his petition,

his coram nobis motion explains that his fingerprints were not found on any weapon, he was not

tested for gunshot residue, and there was no ballistic evidence pointing to his guilt. It is unclear

how these facts raise a claim for ineffective assistance of counsel. What is clear is that there was

sufficient evidence to support the jury's verdict in this case—there were multiple police

eyewitnesses who testified that Hodges shot Officer Gonzalez and Hodges was faced with his

own incriminating statement to police. Any failure of counsel to "make a record of insufficient evidence" by not pursuing *other* evidence would have also likely had no impact on any appeal on insufficiency grounds.

Stepping back, the Court is cognizant of the deferential nature of its inquiry under AEDPA. In analyzing the merits of each of Hodges's claims for ineffective assistance of trial counsel, it is settled that the state court's denial of Hodges's claims constitute an adjudication on the merits. See Richter, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Clearly, AEDPA "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Id. at 785. Hodges must therefore above all show that "the state court's application of the Strickland standard was unreasonable." Id. at 785. Notably, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. Hodges's claims for ineffective assistance of trial counsel are many generations removed from a "strong case for relief." Derivatively from the Court's findings on its independent analysis of the merits of these claims, there are various legitimate reasons spread throughout the record why the state courts could have rejected Hodges's ineffective assistance claims. Quite simply, Hodges fails to surmount AEDPA's high bar. The claims, consequently, do not support issuance of the writ.

### 2. Ineffective Assistance of Appellate Counsel

On July 15, 2009, 12 days prior to submitting the instant petition, Hodges filed an application for a writ of error coram nobis in the Appellate Division, raising multiple ineffective assistance of appellate counsel claims. Since these claims were pending resolution before the Second Department, they were unexhausted at the time Hodges filed the instant petition. Once

again, the Court will nunc pro tunc treat his petition as though his exhausted claims had been

stayed pending resolution of his coram nobis application. See Zavala, 254 F.3d at 382-83. The

exercise is merely academic though, since, despite his initial diligence, Hodges failed to appeal

the Appellate Division's adverse decision rendered on January 19, 2010. Now that more than 30

days have passed from the date of the Appellate Division's decision, Hodges can no longer cure

this defect. See N.Y. Crim. Proc. Law § 460.10(5)(a). Accordingly, the claim of ineffective

assistance of appellate counsel is procedurally barred for failure to exhaust the remedies

available to him in state court. Since it is precluded from federal habeas review, the claim is

dismissed. See 28 U.S.C. § 2254(b)(1)(A).

In any event, the claim is meritless. As a preliminary matter, "the proper standard for

evaluating [a defendant's] claim that appellate counsel was ineffective . . . is that enunciated in

Strickland." Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000). When assessing

appellate counsel's performance, a reviewing court should not "'second-guess reasonable

professional judgments' by appellate attorneys as to what are the most promising issues for

appellate review." Tsirizotakis v. LeFevre, 736 F.2d 57, 65 (2d Cir. 1984) (quoting Jones v.

Barnes, 463 U.S. 745, 754, 103 S. Ct. 3308, 3313-14 (1983)). As a corollary, "appellate counsel

has no 'duty to raise every colorable claim suggested by a client,'" but must instead rely on his

professional judgment in choosing which issues to press. Vasquez v. Rock, 08-CV-1623, 2010

WL 2399891, at *10 (E.D.N.Y. June 10, 2010) (quoting Barnes, 463 U.S. at 754).

### i. *Failure to Raise Claims Petitioner Suggested*

Hodges first contends that appellate counsel was ineffective for failing to raise points he

suggested, including ineffective assistance of trial counsel and a violation of his Fourth

Amendment rights. But "[t]he mere fact that [appellate counsel] was unsuccessful on appeal and

did not raise every claim urged by the petitioner does not constitute ineffective assistance of

counsel." Stokes v. United States, 2001 WL 29997, at *4 (S.D.N.Y. Jan. 9, 2001). Certainly, no

Supreme Court decision "suggests . . . that the indigent defendant has a constitutional right to

compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a

matter of professional judgment, decides not to present those points." Barnes, 463 U.S. at 751.

Accordingly, appellate counsel's reasoned judgment not to pursue Hodges's suggested

arguments did not automatically render his assistance ineffective.

Beyond that, the appellate points Hodges faults counsel for failing to raise were clearly

baseless. As discussed above, Hodges's trial counsel was not ineffective; he provided Hodges

with meaningful, and partially successful, representation. Petitioner was not prejudiced in any

way by council's actions or decisions. Because a claim of ineffective assistance of trial counsel

would have likely failed on appeal and was decidedly not among the more potent arguments,

appellate counsel's failure to raise it cannot constitute ineffectiveness. See Figueroa v. Heath,

No. 10 CV 0121 (JFB), 2011 WL 1838781, at *28 (E.D.N.Y. May 13, 2011) ("[A]ny claim for

ineffective assistance of trial counsel would not have prevailed on appeal, and, therefore,

appellate counsel did not err in failing to raise such a claim."). Moving to the Fourth

Amendment point, there were two handguns at the scene. There was testimony that Hodges

"grabbed Officer Gonzalez's gun and shot him." (Kratter Aff. at 5.) As to the other gun, there

was testimony that it "fell from [Hodges's] pocket during the struggle that followed the

shooting." (Id. at 5-6.) Since the hearing court accepted this version of events and denied

petitioner's Fourth Amendment claims, appellate counsel exercised sound discretion by omitting

this claim on appeal.

### ii.    Failure to Argue for Reversal and New Trial

Hodges next contends that his appellate counsel should have argued for reversal on all

counts and for a new trial. Appellate counsel, in his affirmation, explains that he was "unable to

identify viable issues that would have resulted in reversal [of] all of the counts of which [Hodges] was convicted." (Kratter Aff. at 4.) As a result, "the suppression of [Hodges's] statement . . . was the goal of the arguments in the brief," and reversal of other charges was not justified by this approach. (Id.) Plainly, this decisionmaking process was well within counsel's discretion as an appellate attorney. In fact, this "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 535-36, 106 S. Ct. 2661, 2667 (1986) (quoting Barnes, 463 U.S. at 751-52). It provides further powerful support justifying council's decision to omit all the arguments Hodges controverts now.

### iii. Failure to Communicate or Confer with Petitioner

As the final argument in this set, Hodges asserts that counsel was ineffective for his failure "to discuss the specific issues which would be included in the brief." (Pet'r Coram Nobis Motion at 2.) He further alleges that he "did not have the opportunity to review the brief" before submission and "did not agree to counsel['s] arguments." (Id.) However, Hodges's appellate counsel claims that he wrote Hodges regarding issues in six separate letters and that he "would have sent [Hodges] a draft of the brief before filing it had [Hodges] asked [him] to do so in a timely fashion." (See Kratter Aff. at 4.) Insomuch as Hodges refers to the lack of communication between counsel and himself to prove that counsel omitted meritorious arguments, this claim mirrors petitioner's first point of assault against appellate counsel and on it he cannot prevail. In fact, Hodges's appellate counsel was in a better position than Hodges himself to assess which claims presented the best appellate points, and therefore any prejudice resulting from lack of communication was minimal at worst. See Barnes, 463 U.S. at 751 (internal quotation marks omitted) (recognizing "the superior ability of trained counsel in the examination into the record, research of the law, and marshalling of arguments on the appellant's

28

behalf."). Furthermore, Hodges cannot otherwise demonstrate prejudice because the points he complains were not raised on appeal all lack merit. See Williams v. Garvin, 97 CV 1257 (NG), 1997 WL 433397, at *2 (E.D.N.Y. July 21, 1997) ("[E]ven if it were determined that no communications were had, petitioner could not establish that the result of his appeal would have been different" where his preferred claims were nevertheless without merit.). Therefore, even assuming some breakdown in the communication between Hodges and appellate counsel, the claim still fails.

In sum, Hodges can only "establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). This is not the case here. Just the opposite—counsel's choices were well within acceptable limits. And again, on federal habeas review, Hodges's burden of establishing ineffective assistance of appellate counsel is very high. The Appellate Division, citing Strickland, held that Hodges "failed to establish that he was denied the effective assistance of appellate counsel." People v. Hodges, 69 A.D.3d 879, 892 N.Y.S.2d 781 (2d Dept. 2010). AEDPA instructs that Hodges must show that the state court's adjudication of the claim "involved an unreasonable application of" clearly established federal law, which is no small feat. See Harrington, 131 S. Ct. at 786. Furthermore, when viewed in conjunction with the standard of review demanded by Strickland, a habeas petitioner faces severe obstacles to obtaining relief when challenging a state court's decision on a claim of ineffective assistance. See Harrington, 131 S. Ct. at 788 (internal citations and quotation marks omitted) ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."). Even had the Appellate Division's determination been the exhausted final word, Hodges cannot show that its determination constituted an unreasonable application of clearly established federal law. There

is no shortage of reasonable explanations for why the Second Department denied Hodges's claims on the merits. They fail on habeas review, too.

## E. Pre-Trial Discovery

Lastly, Hodges alleges in his amended petition that his "pre-trial rights to discovery" were violated by the trial court's failure to ensure he received phone records regarding now-Judge Hart's call to the precinct. As a preface, this claim is not exhausted. Hodges made no similar claims in state court, either on direct appeal or through a C.P.L. § 440 motion. But, in any case, it is well-settled that "[t]here is no general constitutional right to discovery in a criminal case," and the Supreme Court has noted that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." Weatherford v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977). At a minimum, "a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment." United States v. Hong, 545 F. Supp. 2d 281, 284 (W.D.N.Y. 2008); see Brady v. Maryland, 373 U.S. 83, 87-88, 83 S. Ct. 1194, 1196-97 (1963). Notwithstanding, "[u]nless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." Pennsylvania v. Ritchie, 480 U.S. 39, 59, 107 S. Ct. 989, 1002 (1987); see also United States v. Rahman, No. S3 93 Cr. 181 (MBM), 1994 WL 533609, at *3 (S.D.N.Y. Sept. 30, 1994) ("Absent a particularized showing that something exists which must be disclosed before trial, the [prosecution] need do no more than acknowledge and abide by its Brady and Giglio obligations."). Moreover, "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." Ritchie, 480 U.S. at 59.

Consequently, even assuming the amorphous evidence petitioner sought from the prosecution was material and would have affected the jury's verdict, Hodges has made no showing that the evidence he sought actually exists. What's more, Hodges had equal or greater

30

access to the information he demanded, given that the records pertained to a phone call made by his own attorney. Nevertheless, the record of proceedings shows that the prosecution made persistent (though fruitless) attempts to obtain Judge Hart's phone records from his relevant wireless carrier. (See Hearing Transcript at 711, 732-33, 736; Calendar Call, January 3, 2002 at 2-6; Calendar Call, January 14, 2002 at 2.) Hodges has not shown that the People subsequently discovered exculpatory evidence and failed to disclose it. There is absolutely nothing that suggests that the prosecution possessed any Brady or other material that was not turned over as constitutionally required. The claim is dismissed.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus filed by William Hodges is dismissed and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
February 14, 2012

ERIC N. VITALIANO
United States District Judge

31